Case No. 18-5316, Institute for Justice Appellate v. Interior Weathering Service. Mr. Green for the appellate, Mr. Rennie for the applicant. Mr. Green for the appellate, Mr. Rennie for the applicant. Good morning, Mr. Prins. Good morning. May it please the Court. My name is Andrew Prins and I represent the Institute for Justice. Through the Freedom of Information Act, the Institute requested all records in the agency's AFTRAC database. The agency or the Institute framed its request in that particular way because multiple agency and Department of Treasury documents refer to AFTRAC as a database. And it's well established that FOIA requesters can request the contents of agency databases. In response, the... I mean, I've gotten off into a very important topic, obviously. Yes, sir. At least the IRS manual simultaneously describes it as a database and a web-based application. Now, I haven't seen anything in the record endeavoring to reconcile those propositions. And it may be that there's absolutely no inconsistency between them. It may be equally a database and a web-based application. I haven't seen anything that makes them inherently mutually exclusive. Can you contribute thoughts on that? Sure. Just as a factual matter, the declaration says that the system compiles data. And a system that compiles data, you would expect to have in a database. In the opposition brief at issue here, the agency's lawyers compared AFTRAC to a system like Google. That's an interesting analogy because everybody knows that Google, while it has a web-based component to it, also has a database. Google's not out there crawling the web and then in real time giving that information in its search results. It's storing all the information in a database. So I think the most likely and the best reading of the evidence, certainly construed in light most favorable to us, is that AFTRAC has a web component to it and a database that it's pulling that information from. I think the broader point, Your Honor, is that... Let's assume we're talking about a record. What would the test be for whether a record was in the database or in the web-based application and what difference would it make? So the records are coming from the database, even if they're presented by the web-based application. So I think there's two separate questions. It's very clear under the eFOIA amendments that the individual data points in the database are record subject to FOIA. There's a separate question of whether the sort of output of the screen on the web interface is also a record subject to FOIA, which the agency below conceded at least the Open Closure Court is a record subject to FOIA. All of these sort of questions and distinctions, I think, just highlight the fact that the agency's declaration was not specific enough to enable the court or us to properly adjudicate this case. And on this point, it's simply there's a big gap about the technical characteristics in AFTRAC and whether the database needed to be searched. I think your opinion, Your Honor, in Ancient Coin Collectors Guild is directly on point on this point. In that case, the requester had requested certain e-mails from the Department of State. And the requester had identified a document on the Department of State's website that said in certain situations, not all situations, but in some situations, e-mails are stored on backup tape as well. The requester submitted that evidence to the district court before the agency did its declaration, and yet the agency's declaration remained totally silent on it. What this court said is that was a gap that was too large for the reasonableness of the search to be determined as a matter of law. Similarly here, the agency, if AFTRAC is not a database that does not have records, that's all the agency needed to say. But it didn't say that. To be sure, the agency's lawyers have made an argument that AFTRAC is not a database. Of course, that's not summary judgment evidence. And so their argument is that they gave us the next best thing, which is the open-closed report. But that's not the next best thing, because we requested all data in AFTRAC. And the open-closed report, as described by the declarant, is not synonymous with all data in AFTRAC. The agency admits that AFTRAC does things other than store information about seized assets. For example, it has statistical and reporting purposes. That information does not report to be in the open-closed report. Likewise, the very fact that the open-closed report is described as a standard report means that the system also has other kinds of reports, nonstandard reports. The agency never explains why. The agency does not describe things other than reports altogether. If you look at Joint Appendix 100, that is Mr. Martin's declaration at Paragraph 6, he says AFTRAC is also used for statistical and reporting purposes. If you look further in Paragraph 6, it also suggests that AFTRAC tracks... Is that where you are? Seven says monitoring assets and inventory and for law enforcement... I'm sorry, you're right. So you're saying the statistics reporting on... Sure, there, exactly. And also, going back to what you just said, Paragraph 6 talks about assets that are seized for abandonment. There's no indication that abandoned assets are included in the open-closed report. So even taking the agency's declaration on its face, there's a lot of gaps. But we went further below, because in this case, we know that the open-closed report does not contain all information about assets. And we know that for two reasons. One, the agency had previously produced to us in 2014 information about assets that had been seized, which, according to Mr. Martin's declaration, should be included in the open-closed report. And in that previous FOIA production, there were three additional columns that are not present in this report. And we discussed this. This FOIA production is at Joint Appendix 646 and 1003, and we discussed this at our opening brief at pages 19 through 20. In addition, the agency... Wait, is that, you're talking about the email back and forth? That is an additional... That's a separate issue. Yes, that's correct. So we have a previous FOIA production in which we know there's additional columns of information about assets, including the state in which the asset has been seized, and including the statute that the alleged property owner is alleged to have violated. Those are not in the open-closed report. The second point, which I think, Judge Pillard, is what you were alluding to, is the agency's lawyer below, when she produced a sample of the assets, was not present in the open-closed report. So the agency did not provide a sample of the open-closed report to us that listed all the columns. It made it in response to my question, which is in the record as well at Joint Appendix 498, that the open-closed report does not contain all the information extractable from AFTRAC. That wasn't entirely clear how that, how or whether that was resolved, because it seemed that the question from you was, state property was seized, actual forfeiture amount, and forfeiture amount. And then the follow-up from Ms. Payton says, primary statute and value are in the report, leaving, I gather, only state out of it. And you say, please provide a sample that contains a complete list, and we don't know whether... That was not provided. That was not provided. So, but given that exchange, it sounds like it does include the statute, which was one of the things that you said your prior FOIA, by contrast, showed wasn't included. Is that not one of the columns? No, it's not. Ms. Payton was conflating, there is a column in the open-closed report about the statute that was authorizing the agency to engage in the seizure. You know, the sort of remedial authority that the agency has to do the seizure. But that is different than the statute that the property owner or the target was alleged to have violated. That's helpful. Can you talk a little bit about the 7-F redactions and why you think your arguments there have not been forfeited? So this is, the 7-F arguments are, relate specifically to one column in the open-closed report. The asset description column, which is just a description of the asset that's being seized. So I'll admit to this day, I'm still not exactly sure what the agency is doing with this column. It originally redacted the entire column under a combination of 7-F, which is the life or safety exemption, and 6 and 7-C, which are the privacy exemptions. The district court below held that the agency's justification for using the privacy exemptions was inadequately supported. Because the agency had conceded that the information was already public. Not only does its declaration concede that, but its brief conceded it. And the information is public because it is published in a newspaper of general circulation for three weeks after the seizure. So the district court told the agency to unredact to the extent it's relying on the privacy exemptions or provide a further justification. This is all after summary judgment briefing has concluded now. And the agency then produced a new version of the report with some asset descriptions revealed, but the rest still redacted, continuing to rely on the privacy exemptions in 7-F. So to this day, I still think the agency is arguing that it can be... Yes, right. And so, well, it's both. I understand the agency to still be relying on both sets of exemptions. To the extent it's relying on the privacy exemptions still, it's invalid for the reason the district court already concluded and the agency hasn't challenged on appeal. It's public. Fair enough. We did not challenge the application of Exemption 7-F below. Because the agency's stated rationale for applying 7-F was simply that the column may contain a property address. So the agency should be allowed to assert Exemption 7-F to the extent it can't. But that just means that the rest of the information in the column needs to be segregated per the agency's statutory obligation. And, of course, the district court's independent obligation to make a segregability finding, which it declined to do here. It just didn't do it. And that argument is not... That argument cannot be waived. It's not waived and cannot be waived. Well, you protested promptly when you had reason to believe that they were over-applying 7-F. That's exactly right. We did lodge an objection to the district court. If I might, for a minute, just speak on the question of the open investigation. Here, the agency redacted every row in the open-closed report that relates to an open investigation. Of course, and it did so under Exemption 7-A, which is the exemption that protects disclosure information that could reasonably be expected to interfere with an enforcement proceeding. Critically, it categorically redacted. So every single one of the 22 columns in the open-closed report, it said it could exempt. But that's a problem, because under this court's precedence, categories, if you're going to use categorical exclusions, need to be drawn very narrowly so they're not sweeping in a bunch of information that isn't unprotected. And here, you know, the agency's declaration in providing the justification for the categorical withholding didn't even describe why most of the columns could interfere with an enforcement proceeding. For example, they're withholding seizure type, which is just a description of whether a seizure is administrative, criminal, or civil. How could that interfere with an enforcement proceeding? And I'm not trying to be too cute, but the agency's also withholding the asset status entry, which is itself just an indication of whether the asset is associated with an open or closed investigation, which is the very information that its assertion, categorical assertion of 7-A already reveals. So the point here is not that none of this information could be withheld under 7-A. It's that the agency has just done, painted with too broad of a brush here, and it needs to go back for the agency to properly support it or release the rest of the information. And if there's no further questions, I'll reserve them. Thank you, Your Honor. Good morning, Mr. Rennie. Good morning, Your Honors. Appearing today for the Internal Revenue Service. Your Honors, AFTRAC is the IRS's Criminal Investigation Division's asset forfeiture tracking and retrieval system. In other words, it's a law enforcement computer system. The FOIA request in this case is based on a fundamental misconception of how that system works. Nonetheless, the IRS liberally construed that request and responded by producing the most comprehensive standard report that it uses that system to generate. Are there nonstandard reports or other records in the database? It might theoretically be possible that it could generate nonstandard reports, and I believe that is what my colleague was saying in the e-mail that was discussed earlier. In other words, the declaration explains that it pulls information from other systems together for the purposes of tracking these seizures. And that's what appears in something like the open-close report. There might be additional fields of information that are in those other systems that in theory one could use AFTRAC to pull into a nonstandard report. So it keeps nothing? It stores nothing? It's simply a tool, like a tunnel into other computer systems where it can suck together when needed information? We have construed their request broadly such that our position has been that it contains standard reports because those can be quickly generated through a drop-down menu. And I think as the declaration in the Internal Revenue Manual explained, it contains information to the extent that it has computer code that allows it to pull information from these other systems into a standard report. Is the distinction the IRS is relying on a turn on whether the information is in a particular computer or as opposed to being distributed across various computers or what? Your Honor, I guess our distinction is... You do call it a database in the manual. It's understandable that people would think that that characterization meant that it was a database, which sounds like something that contains data. I understand, Your Honor, but that's an imprecise term. It's not a statutorily defined term, which is what they are treating it as the equivalent of. I want you to help us figuring out the line that you're trying to draw between databases that seem, not necessarily automatically, but pretty automatically to be understood as containing records to what's going on here. Your Honor, our point is that a database is something that's susceptible to different definitions. And we tried to point this out in our brief, and we pointed out that there are a number of definitions, even among experts in the information technology field, that it can mean a number of different things. What they want it to mean is that it's the equivalent of a filing cabinet. And our point is that's not what it is. It's not what they think it is. From what you've said, you seem to be saying that it's different from a filing cabinet, brickless, electronic, not paper. But also that when you go into the room and you pull out a drawer, that's only part of what you get through this. Have I got the distinction you're resting on there?  The question is, what is it, in your view, that makes information that a person can get by an IRS employee, can get by using AFTRAC, how is that not a record? Well, we did interpret it as being a record. That's why we produced the open-close report here, because that is what the agency uses it to do. You sort of take the position as a matter of charity. You repeated this report, which is pretty much by definition just an artifact, not the comprehensive thing itself, as a record. But the question is, why aren't the data from which it is drawn and data that is not used for creating such reports, why aren't those data records? They originally argued that we should have construed their request as reaching the sources that AFTRAC pulls information from. I believe in their reply brief, they explicitly abandoned that argument, Your Honor. And frankly, it is their burden as the requester to adequately identify and reasonably describe the records sought so that the agency... Well, that's asking quite a lot. You have a bunch of computers completely under the control of the IRS and you're saying that without discovery, they have got to explain how it is that they're organized in a way that rejects, rebuts the IRS's claim that these aren't subject to the request? Well, Your Honor, their remedy is to make a new request upon realizing that this isn't what they thought it would be. Well, how would you draft that request for them? I mean, is the only difference you would make is that instead of contained in, it would be contained in and or accessible through? Part of the problem, Your Honor, is I'm not entirely sure what it is they're after, which has never been clear. I think they want all the FOIA eligible data in AFTRAC. They want everything under the sun, which is... I'm a little confused by even what you said today. You've described it as if it's sort of a pipeline system with an empty cistern in information report in IRS, that nothing lives at the IRS, but that the IRS can pull when it needs information. And that's, I assume, where the Google analogy comes from. I don't need to have Wikipedia on my computer when I want to look something up. I go find it, so too with Westlaw, so too with... To be clear, this is information that's all within the IRS. It's not in AFTRAC, is our point. Okay, so in the IRS, it's not in AFTRAC. So when employees use AFTRAC, as you've described, to input information, that doesn't actually... Again, they're just throwing it back down those pipes to the other electronic filing cabinets where it should live. So AFTRAC is just really almost like... We do a hatchet job on the terminology, but it's some kind of an interface or program or window into other systems. That's my understanding, Your Honor, and presumably you could save whatever report it is you generated from the system, whether it be something... Is the difference we're talking about a... An analogy. A database that is the equivalent of a bunch of filing cabinets in one room in Washington, D.C., versus a collection of rooms with computers all over the United States having data and presumably properly requested records that are all accessible from one computer terminal. I probably botched that description because it's... I think, and you'll correct me if I'm wrong, that the question is, are the other sites within the IRS that someone making this open and closed report is drawing from, are those part of AFTRAC or they have another name? Your Honor, I believe those have different names and are resident in different offices. And they're not considered part of the AFTRAC system. I don't think that's in the record. I don't see that in the Martin Declaration. I see I'm out of time. May I answer, Your Honor? Absolutely. As long as we have questions, you can continue. I believe that the Internal Revenue Manual at some point refers to field office systems, and my understanding is that's what it's pulling information from. I'm sorry, I didn't hear that. I believe the Internal Revenue Manual refers at some point to field office systems, separate systems, and my understanding is that's what it's pulling information from. I see. Will some of these questions about what AFTRAC is precisely be, is that part of what's in a new case that IJ has brought with some new FOIA requests? I believe so, Your Honor. Does that affect our consideration of these issues? It isn't relevant to the disposition of the case. It's more for the court's information. If Your Honor has no further questions, we will. What is your response to the various specific ways that A, the requesters have said they have indicia that the open and closed report is not comprehensive? They've identified columns and kinds of functions that the office says it uses AFTRAC for that would generate information that's not reflected about criminal investigations or statistics about criminality or the statute that justified the seizure in the first place or the state where it took place. I may be misremembering, but there were a few items. Sure. The statistical and reporting point, Your Honor, I believe that's addressed in Mr. Martin's declaration and also referred to in the Internal Revenue Manual. And what it says is that AFTRAC is used for monitoring assets and inventory and for law enforcement statistical and reporting purposes. It's a use for the system. It's not saying there's separate statistical information in the system. So your position would be that it draws and organizes the very information that's on the open and closed report or a subset thereof in a way that would inform or would fulfill reporting duties of the IRS to various other entities. Right. And so it doesn't to you indicate that there's any other information that isn't included in the open and closed report? Correct. In other words, you could determine how many open cases are in this office versus that office, that kind of thing. And what about the rows and columns and the overuse of 7 1⁄2? I believe, Your Honor, that is a reference to a prior FOIA request that was made to the IRS. And I don't believe that request specifically referenced AFTRAC. It was a request for information concerning seizures regarding structuring violations. And it was a much more specific request about the information that they were looking for. So whoever was putting together the response just decided the easiest way to deal with it was to pull together that information and provide it to them. And I don't know specifically that may be a field that is theoretically extractable through AFTRAC. But I don't know that specifically. And in terms of the assertion of Exemption 7A to redact entire rows related to open investigations, we have very clear law on the need to segregate and only refuse to disclose that which is really supported by the exemption. Correct, Your Honor. Yes. And I understand that. And part of the question is, when you talk about categorical redactions in the Campbell case is probably the lead case on the subject. The Court's main concern there is that you would have random documents that might find their way into an investigation file that the agency then might sort of, well, this is all in the file. Therefore, you never get to find out what was in there and what was redacted. This information on the other hand, it is not some randomly compiled file. It is specifically put together by the agency for the purpose of tracking and monitoring these investigations. It's information that the agency deemed to be important about their investigations. Regarding segregation specifically, as we pointed out, there is a presumption of compliance. And that's particularly true as stated under the Hodge case when you're dealing with information of a sensitive nature such as investigatory information. Here we're talking about the report itself. It's 22 columns, approximately 27,000 rows. That's about 600,000 total cells. At some point, this becomes unreasonably burdensome, which is something that this Court accepted in the Mead data case at footnote 55. Essentially said, an agency need not commit significant time and resources to the separation of disjointed words, phrases, or even sentences when taken separately or together. They have minimal or no information content. I'm curious what Mr. Martin was doing the many months that he was working on this. It seems like it was just much more automatic. That's open, open, open. That there wasn't any actual case specific or row specific determination. There are, Your Honor. For example, in the asset description column, they've pointed out that they claim that it must be generic because various examples they point out within that column are generic. But that indicates that he went through that and segregated out the releasable information. Additionally, we did release a fair amount of information after the District Court issued its initial order. It essentially gave us the choice of submitting an additional declaration or providing additional information. We decided to release the organization abstract number, asset description information, as well as the program area column, which wasn't even implicated by that. Just to give you another example, take their example, which is page 26 of their reply brief. They suggest that if the asset description column says 100 gold bars stored at 15 Main Street, we should have gone into there and looked at that. Because 100 gold bars is also very specific information about this particular investigation. Someone is going to be able to look at that and figure out what investigation that was. And so once you redact that, you're left with something like stored at, which is just a meaningless word salad. So we would submit that our redactions complied with this court's standards. The 15 gold bars, that's an example of the sort of thing that, sort of issue that might be posed if there was actually a cell by cell consideration. You're not saying Mr. Martin went through all the cells to see, to exclude gold bar cases and others with fingerprints as it were, as to what was involved, as to what the specific thing was. He went through the report, Your Honor. I wasn't there. I can't tell you specifically. But there's no, within the row, there's been no determination whether, for example, in one case if it was, you know, a kilo of cocaine, that would probably be not something that would tip off that that was, you know, the one that was being held at, or that was seized at 15 Main Street in Lincoln, Nebraska. It could just as well be the one that was seized on Palm Drive in Miami. So the question I think is, were those judgments ever made with respect to those rows, or was it just open investigation? Those rows are all redacted, Your Honor. Part of the problem with this type of analysis is, and the district court itself alluded to it, is if we knew what they specifically wanted, we could have probably gone through there and tried to pull that information out without revealing as a whole what the particular investigation was into. But without knowing that, it becomes like a shifting puzzle, where we could reveal one piece of information, but once it's combined with other information, it begins to add up to the point where it basically reveals what investigation we're talking about. And those are the kinds of explanations that we need in an affidavit in order to be able to review the rationale. I understand, Your Honor. I just have a question about part of the Martin affidavit, and this is paragraph 40, page 108 of the joint appendix. It's basically that first sentence is saying what is required to be in the public notice. So it relates very closely to this question of what is essentially exempt from exemptions because it has already been publicly disclosed. Now, it starts out somewhat mysteriously. The information redacted from most of columns, most columns, pursuant to 6 and 7C, let's skip the parenthesis for a moment, is required to be included in the public notice. Okay. And go back to the parenthesis. All but the lead agent, program area, and CCATS number. So it seems to be the natural, possibly not exclusively possible reading of this, is that the categories in the parenthesis are the only exceptions so that the initial clause would read the information redacted from the columns, pursuant to 6 and 7C, and then the parenthetical. Right? Is that so? So that the most of is not adding anything to the proposition Mr. Martin is asserting? I'm not sure if I'm following your question, Your Honor. Well, I'm asking you what that first sentence means. And one construction which I've offered you seems to me sort of obvious, but we deal with ambiguities of language all the time here, and maybe something else is meant. I believe you're correct, Your Honor. That's my understanding. You can really strike the most of clause and rely on the parenthesis. In other words, those are the ones that are not required to be included. Although I believe there is also another declaration, or perhaps it was the notice of compliance submitted later, that indicated that there might have been one or more other columns that should have been included in that parenthesis. So you're not sure it's fair to read it as, pursuant to exemption 6 and 7C, all but the lead agent program area and CCAS numbers required to be included in the public notice? In other words, you're saying there may be some other qualifying language elsewhere. Essentially that there may be one or two other columns that should have been included in that group. That's all. There's no intended mystery revealed in the words most of. I did not read it that way. Thank you, Mr. Rennie. Thank you. If I might, I'd just like to make a couple of points. This Court's precedents require detail. And as Judge Williams, you pointed out, FOIA requesters typically can't get discovery. And the summary judgment standard is that all this evidence needs to be construed in the light most favorable to us. So all of these ambiguities we are discussing seem to me to require reversal as a starting point. The department that the agency is in have described the system that we were trying to obtain the records from. Judge Rau, you asked about a subsequent FOIA request that we submitted. When the agency started claiming that AFTRAC wasn't a database, we submitted a FOIA request asking for documents describing the technical characteristics of AFTRAC. Perhaps unsurprisingly, the agency's response was 17 pages of fully redacted information, not a single line in the information revealed. I don't know what that says, but we did what we could. Another point is that even if you accepted the agency's characterization that it is... That came in after the close of briefing here? No, it didn't. It's not technically before us. No, no. But the whole existence of the subsequent FOIA request itself is not really relevant given the lack of specificity in the declaration. Even if you were to accept what the agency's lawyers say was their reasonable characterization of our request as one for reports, which, again, the declarant didn't say, but even if you accept that, there's no reason to believe that the production of the single open-closed report was reasonable when we know there's other reports. If you look at Joint Appendix 234, this is also part of the Internal Revenue Service Manual, it is instructing agents to consider the various reports in AFTRAC. So there's obviously other reports. And I don't even hear agency's counsel to be denying that when you were asking him. Well, if... I can pull the data that I put in about my patients. I can do a report on everyone who's gotten a flu shot. I can do a report on everyone who's gotten any vaccination. I can do a report on all my patients under 18, all my patients under 18 who smoke. Then there would be drop-downs or there would be abilities to make reports that would be really perhaps infinite. And if that's what we have here, and the IRS has said, why don't we do the biggest report that we can do that has, you know, everybody under 18, whether they smoke, what shot they've gotten, and everybody, you know, over 18, too, and all that, then why isn't that fully responsive? What else are you suspecting is in there? So let's assume for the minute that the agency described all that in its declaration, which is what it would have needed to do. So if it did that, I agree that it is possible that if there was one report which contained the most information you could ever possibly get, maybe that would be enough. But here the agency doesn't even say that it was doing that. It says that the open and closed report is the most information about seized assets you could possibly get. But we know that after, as I mentioned. Does it go so far as to say that? I thought it said the most that is disclosed in any report. Yes, that's standard in any standard report. So I take your point, Judge Pillow, that there are some technical characteristics of a reporting system where you could get into a scenario like that. But there's just simply no evidence before this Court that would allow it to conclude that what the agency actually did here was reasonable. Opposing counsel mentioned something about if they were to segregate out the information, it would be unreasonably burdensome. Of course, it's also the agency's burden to establish that. It didn't argue that below. I don't really even declare it didn't establish the necessary factual predicate for that. So I don't think that argument works. Judge Williams, you were asking about the situation of gold bars appearing in the asset description column. Again, I just want to emphasize the information in the asset description column is already public. So the fact that 100 gold bars might tip, you know, reveal a very specific type of investigation, it's already revealed. It's in the newspapers of general circulation. So again, I don't think that argument works. Yeah, but it puts us in mind of the cases at Jones, the GPS case, where it's one thing to have it in one newspaper in Des Moines when somebody's looking for it. It's another thing to have it always and everywhere for somebody who says, I'm looking for houses to rob where I might find more gold bars. So well, I guess that's water under the bridge because the district judge said, OK, it's public, then you can't assert, which was not challenged on appeal. And more importantly, it would be particularly unfair to adopt that interpretation here because below the agency tried to use the fact it was public. It was public against disclosure. It was trying to turn around the other way. The last point I'll just make is there was a question about what the supplemental declaration said about information not being public. What that declaration said is the investigation number is not released in the newspapers. And if there's no more questions, we'll rest on our briefs.
judges: Pillard, Rao, Williams